Adeline L. COX, Mary Handlon, Mary R. Messock, Mary Dubos, Anna Murga, Frances Gajewski and Emma Burk

v.

UNITED STATES GYPSUM COMPANY, a Delaware corporation, and International Brotherhood of Teamsters Local 142, Gary, Indiana.

Civ. No. 4696.

United States District Court
N. D. Indiana,
Hammond Division.

March 28, 1968.

John Leeney, Hammond, Ind., for plaintiffs.

Harold D. Burgess and John A. Jeffries, Chicago, Ill., for defendant U. S. Gypsum.

Lester Asher and Marvin Gittler, Chicago, Ill., for defendant International Brotherhood of Teamsters, Local 142.

## MEMORANDUM

BEAMER, District Judge.

This action is brought under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e.

Plaintiffs are several women previously employed by the United States Gypsum Company. The plaintiffs were "laid off" between January 3, 1966, and June 21, 1966. They all subsequently filed charges before the Equal Employment Opportunity Commission alleging that they were discriminated against on account of their sex. Some of the charges were directed solely against United States Gypsum but the majority were also directed against the employee's union. Conciliation was attempted and the Company consented to a proposed conciliation agreement with some changes. The employees, however, turned down the proposed agreement and filed their actions against the Union and the Company in this Court. Subsequently, the Union and Company filed various motions for summary judgment and for dismissal.

There are several issues presented by the complaint and the motions directed to it. First, must an aggrieved party file a charge against a respondent with the Equal Employment Opportunity Commission before he may bring an action against that respondent in Court? Second, must the charge filed before the Commission be filed within ninety (90) days of the alleged discrimination and

must it give adequate notice of the charge eventually brought in Court? Third, is a discriminatory layoff a continuing violation for the purposes of the ninety (90) day period within which to file a charge? Fourth, must the aggrieved party obtain a notice of failure of conciliation from the Equal Employment Opportunity Commission before proceeding in Court if the Commission has already determined the existence of good cause? Fifth, does conciliation mean agreement of both the charging party and respondent, or the respondent only?

The law on some of these points is quite unsettled. The statute is new and there has been little opportunity for authoritative interpretation. In fact, a majority of the cases cited by the parties were unpublished at the time the briefs were submitted and oral argument heard. Copies of the various opinions relied upon were supplied to the Court by the parties. The pertinent portion of the Statute reads as follows, Title 42 U.S.C. 2000e–5(e):

> If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) of this section (except that in either case such period may be extended to not more than sixty days upon a determination by the Commission that further efforts to secure voluntary compliance are warranted), the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge (1) by the person claiming to be aggrieved * * *.

Title 42 U.S.C. § 2000e–5(d) also provides: "A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred * * *".

■■ Although the Courts disagree on many aspects of this act, there is one point on which they all agree. No civil action may be maintained unless the aggrieved party has first filed a charge against the defendant before the Equal Employment Opportunity · Commission, and the charge is filed within ninety (90) days of the alleged discrimination. Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967); Bowe v. Colgate Palmolive Co., 272 F.Supp. 332 (S.D.Ind.1967); Moody v. Albemarle Paper Co., 271 F.Supp. 27 (E.D.N.C.1967); Mondy v. Crown Zellerbach, 271 F.Supp. 258 (E.D.La.1967); Anthony v. Brooks (N.D.Ga.1967); Quarles v. Philip Morris, 271 F.Supp. 842 (E.D.Va.1967); Dent v. St. Louis-San Francisco Ry., 265 F.Supp. 56 (N.D. Ala.1967); Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn.1966). Any other rule would be clearly inconsistent with the language of the act. Therefore, summary judgment must be granted on those actions against the union filed by plaintiffs who did not name the union in their complaints before the Commission. An examination of the Exhibits on file show that plaintiffs Mary R. Messock, Mary Dubos, and Frances I. Gajewski did not name the International Brotherhood of Teamsters, Local 142, in their charges to the Commission. The defendant union is granted summary judgment on the complaints of these plaintiffs. The remaining plaintiffs filed charges against the Union and all the plaintiffs filed charges against the U. S. Gypsum Company. There are, however, serious questions about the adequacy and timeliness of these charges. As already stated, charges before the Commission must be filed within ninety (90) days of the alleged unlawful employment practice. This is a positive command of the statute, which says, Title 42 U.S.C. § 2000e–5(d), "A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred * * *." Several of the charges filed by these plain-

tiffs were not filed until more than ninety (90) days after they were originally laid off, as shown by the following chart:

| NAME OF PLAINTIFF | DATE OF LAY-OFF | DATE OF CHARGE |
| --- | --- | --- |
| Mary R. Messock | January 14, 1966 | June 13, 1966 |
| Mary Dubos | January 14, 1966 | June 13, 1966 |
| Emma Burk | January 14, 1966 | June 13, 1966 |
| Anna Murga | January 14, 1966 | June 13, 1966 |
| Adeline L. Cox | January 3, 1966 | June 13, 1966 |
| Mary W. Handlon | March 16, 1966 | April 1, 1966 (amended June 3, 1966) |
| Frances Gajewski | June 21, 1966 | June 24, 1966 |

The first five (5) persons named above did not file charges with the E.E.O.C. until more than ninety (90) days after their layoff. They contend, however, that under the facts of this case there was a continuing violation of the act. They allege by affidavit, made on information and belief rather than personal knowledge, that male personnel were hired to perform jobs which they, the plaintiffs, were qualified to perform. They further allege that these men were hired between the time the plaintiffs were laid off and the time they filed their charges. These affidavits have little force because Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits be made on personal knowledge. The defendants claim that a layoff is not a continuing violation and that the pertinent dates are those the plaintiffs were actually laid off.

Neither party has cited case or statutory authority for their respective positions. Both rely on opinions of the General Counsel of the E.E.O.C. In a published General Counsel opinion of January 11, 1966, it stated:

A layoff is not a continuing act and accordingly, a charge alleging a discriminatory layoff must be filed within 90 days of the layoff, unless deferral to a state or local FEP agency is required. The fact that some aspects of the employment relationship, such as recall rights, may continue beyond the date of the layoff is immaterial.

Where, however, an employer discriminates with respect to the recall of laid-off employees, the 90-day period commences at the time such discriminatory recalls are made.

A later published letter from the General Counsel, dated August 19, 1966, and released September 14, 1966, stated:

The 90-day time period within which to file a complaint of discriminatory discharge begins to run upon complete termination of the employment status. This limitation cannot be waived, unless it can be shown that employment status continued pending a final review by management and that the complaint was filed within 90 days of the final review of exhaustion of grievance procedures.

The letter went on to state, "During phone conversations I was told that the company relieved her of all duties and stopped paying her salary on August 6, 1965. In the absence of additional information these facts indicate a complete termination of her employment status."

These letters appear to be the only authority available on when the ninety (90) day period runs with respect to lay-offs. There are two questions which must be answered. First, should the Court follow the policy enunciated by the General Counsel of the Commission as to when the violation occurs? Second, have the plaintiffs taken this case outside of this policy by showing or alleging subsequent acts of discrimination?

The interpretation and application given the statute by the administrative agency should be given great weight by the Court. In Udall v. Tallman, 380 U.S. 1, 15, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965), involving interpretation of an executive order and statute, the Supreme Court said:

When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." * * * "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' "

This language applies to the situation before the Court here. The E.E.O.C. was charged with hearing complaints under the statute in question. It was faced with a limitation upon the time within which the complaints could be filed. It had to determine when such complaints were timely filed. It adopted, through the General Counsel, a reasonable interpretation of the statute as applied to the facts in question.

The interpretation adopted was reasonable, because any other would result in a great deal of confusion. If a layoff alone, without the allegation of some other continuing act, was construed as a continuing violation, the ninety (90) day requirement would be a nullity. There would be no fixed or certain way of computing the ninety (90) day period which Congress deliberately placed in the statute. The provision in the General Counsel's first letter, stating that the ninety (90) day period would run from a discriminatory recall, would prevent employees from suffering any undue hardship. The Court, therefore, holds that a layoff, without more, is not a continuing violation of the act even if some employment rights continue.

The second problem presented by the ninety (90) day requirement, is the application of the Court's interpretation of a layoff to the facts before this Court. In this case, most of the charges filed before the Commission simply alleged that the employees were the victims of a discriminatory layoff. None of them made any allegations concerning recall rights as such. The complaint filed in this Court did not allege any discriminatory recalls. There has been some allegation, in briefs and oral arguments, that there may have been some negotiation or grievance procedures in progress. However, it is stipulated that at least four (4) of the plaintiffs never invoked grievance procedures and there is nothing to indicate that other negotiations were being carried out. The facts before the Court show only the allegations in the Charges before the Commission and the allegations in the Complaint in this Court.

An examination of the charges filed with the Commission shows that plaintiffs Messock, Dubos, Burk, Murga and Cox filed their charges more than ninety (90) days after the date of their alleged layoff. Of these, the charges of Murga, Burk and Cox allege: "I was laid off * * * even though I had seniority rights over male employees who were retained. Job titles were changed to circumvent employment of women. The Union failed to protect my employment rights." Each of them alleged the date of their layoff and added the word "continuing" in the space provided for "the most recent date on which this discrimination took place." Plaintiff Messock simply alleged that the violation was "continuing" and that "Also at the present time Gypsum is hiring new men." Plaintiff Dubos alleged that the violation was "continuing" and that "the company laid the women off and kept the

men with less seniority and hired new help."

■ It may be argued that the charge filed by an aggrieved person himself should be given a most liberal interpretation because such a person cannot be expected to plead a case with the precision of one trained in legal techniques. Although the Court is inclined to favor this position, it must hold that a charge must be sufficiently precise to inform the Commission and the defendant of the actual grievance alleged. Title 42 U.S.C. § 2000e–5(a) provides:

> Whenever it is charged in writing under oath by a person claiming to be aggrieved, or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this subchapter has occurred (*and such charge sets forth the facts upon which it is based*) that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization (hereinafter referred to as the 'respondent') *with a copy of such charge and shall make an investigation of such charge* * * *. (emphasis added)

■ This passage clearly indicates that the Commission is confined to the charge that was filed by the charging party and is not given carte blanche to investigate all activities of the respondent. Thus, here where several of the plaintiffs have limited their charge against the company to a claim of discriminatory layoffs, both the Commission and the Court are limited to a consideration of that charge. The Commission and this Court have drawn a distinction between a layoff and discriminatory recall. This Court, must, therefore, grant summary judgment for the defendants on the complaints of those plaintiffs who failed to allege any facts suggesting a discriminatory recall. The defendants are granted summary judgment on the complaints of Emma Burk, Anna Murga and Adeline L. Cox. The motions to dismiss or for summary judgment on the complaints of Mary R. Messock, Mary Dubos, Mary W. Handlon, and Frances Gajewski must be denied on this ground. Plaintiffs Messock and Dubos sufficiently alleged discriminatory recalls in their charges and thus alleged a continuing violation. Plaintiffs Handlon and Gajewski filed charges with the Commission within ninety (90) days of their actual layoffs so their complaints withstand objections on this ground.

■ The charges filed against the union by plaintiffs Burk, Murga, Cox and Handlon (the only ones who filed any charge against the union) merely alleged that the "union failed to protect my employment rights." Such a charge is quite different from the allegation in the complaint that the union "caused their employment to be terminated." Their complaints would have to be amended to reflect the charges filed before the Commission, or be dismissed, because they cannot rely on different grounds here than they asserted before the Commission. However, a stipulation of fact entered into between plaintiffs' counsel and counsel for the defendant union states:

> (1) At no time on or after January 1, 1966, did ANNA MURGA, EMMA BURK, MARY HANDLON or ADELINE COX invoke Article III, entitled, "Grievance Procedure" of the Collective Bargaining Agreement in an attempt to resolve or clarify their complaint relating to the lay-offs in issue in this cause.

> (2) At no time on or after January 1, 1966, did any of said parties demand or request Union representation in support of any complaint and/or grievance relating to the lay-offs in issue in this cause.

> (3) At no time on or after January 1, 1966, did any of said parties notify Local 142 of a complaint or grievance relating to the lay-offs in issue in this cause as provided for in Article III of the Collective Bargaining Agreement. A copy of Article III of the collective bargaining agreement between the de-

fendant union and defendant employer shows that at all stages of the grievance procedure the employee has the option of invoking union representation or of proceeding alone without such representation. In view of the stipulation that the plaintiffs here never invoked the aid of the union in these matters, there is no ground for holding the union liable for failure to represent them or failing to protect their employment rights. Since this is the complaint which was alleged before the E.E.O.C., and thus the only complaint which may be brought before this Court, there are no grounds for the plaintiffs' action against the defendant union. The defendant Brotherhood of Teamsters, Local 142's motion for summary judgment is granted as to plaintiffs Burk, Murga, Handlon and Cox.

Both defendants also contend that the complaints of all plaintiffs must be dismissed because the plaintiffs never received a notice from the Commission of failure of conciliation. This position is based on the language of the statute, administrative interpretations, and case decisions. As quoted earlier, Title 42 U.S.C. § 2000e–5(e) (supra, p. 3) provides that if within a maximum of sixty (60) days after complaint is filed

the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge (1) by the person so aggrieved.

The Commission has interpreted this section in light of Title 42 U.S.C. § 2000e–5(a), which provides:

Whenever it is charged in writing under oath by a person claiming to be aggrieved * * * If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.

The Commission has provided by rule, 29 C.F.R. Sec. 1601.25:

In any instance in which the Commission is unable to obtain voluntary compliance as provided by Title VII it shall so notify the respondent and the aggrieved person or persons. Notification to an aggrieved person shall include:

(a) A copy of the charge.

(b) A copy of the Commission's determination of reasonable cause.

(c) Advice concerning his right to proceed in Court under section 706 (e) of Title VII.

The rules adopted by the Commission also state in 29 C.F.R. Sec. 1601.25a:

(b) Notwithstanding the provisions of subsection (a) of this section, the Commission shall not issue a notice pursuant to section 1601.25 prior to a determination under section 1601.19 (determination of probable cause) or, where reasonable cause has been found, prior to efforts at conciliation with respondent, except that the charging party or the respondent may upon the expiration of 60 days after the filing of the charge or at any time thereafter, demand in writing that such notice issue, and the Commission shall promptly issue such notice to all parties.

As far as can be determined, such notice was never issued in this case. Charges were filed by various plaintiffs between June 9, 1966, and June 23, 1966. A conciliator was appointed and he attempted to work out an agreement between the parties. A proposed agreement was sent to U. S. Gypsum and then returned with changes. This was forwarded to the plaintiffs, who summarily rejected it. On May 11, 1967, the plaintiffs commenced this suit by requesting appointment of counsel. Counsel was appointed and a complaint was filed on May 15, 1967. By letter dated June 19, 1967, the Commission wrote to the defendant company and stated:

The Commission appreciates the good faith efforts you have made to settle

this dispute. We must point out, however, that proposals submitted by a conciliator are not binding on the charging parties. Under present circumstances the charging parties are free to pursue their statutory rights under Section 706 of Title VII and to seek the remedies they believe to be appropriate.

It is the defendants' position that no suit can be maintained here because the Commission failed to notify the parties of a failure of conciliation as set forth in the statute and regulations. The Company further claims that "conciliation means the agreement of the respondent and not the charging party."

The plaintiffs contend that they waited far longer than the required sixty (60) day period before filing a suit. Not until they received a totally unacceptable offer of conciliation did they attempt to resort to the Courts. They further contend that upon receipt of that offer, they believed that it was necessary for them to file their suit within thirty (30) days or be barred by the statutory limitations. The issue presented is: Must the aggrieved parties await the formal notice of failure of conciliation before filing suit when the Commission has already determined that there is reasonable cause to believe that a violation has been committed as evidenced by their efforts at conciliation?

The law on all questions involved with this Act is uncertain. Most of the cases cited by the parties are available only in mimeograph form or in special services. None of the cases have dealt with the specific question presented by this issue. All of those cited agree that resort to the Commission within ninety (90) days of the alleged violation is necessary before suit may be maintained for reinstatement or back pay. (Cases cited supra, p. 327) The cases are in complete disagreement over the need for the E.E.O.C. to actually attempt conciliation. In Dent v. St. Louis-San Francisco Ry., 265 F.Supp. 56 (N.D.Ala.1967) the Court held that actual efforts to conciliate the dispute were a prerequisite to any court action. In Mondy v. Crown-Zellerbach, 271 F.Supp.

258 (E.D.La.1967), Moody v. Albemarle Paper Co., 271 F.Supp. 27 (E.D.N.C. 1967), Quarles v. Philip Morris, 271 F. Supp. 842 (E.D.Va.1967) and Evenson v. Northwest Airlines, Inc., 268 F.Supp. 29 (E.D.Va.1967), however, the courts held that actual efforts at conciliation were unnecessary prior to filing suit. The rationale of these later cases depended on the belief that the aggrieved party could not be held responsible for the actions of the Commission.

None of the cases actually ruled on the necessity of receiving a notice of failure of conciliation prior to filing suit although many of them spoke in terms of such a requirement. Thus, in Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332, 338 (S.D.Ind.1967) Judge Steckler said:

On the other hand, the Court is convinced that no action for damages or reinstatement under the Act can be maintained by those employees of defendant who failed to file timely charges with the EEOC, *or who, filing charges, did not receive a communication from the EEOC indicating that probable cause existed to believe that a violation of the Act had occurred.* The Court agrees with the reasoning of Hall v. Werthan Bag Corp., 251 F. Supp. 184 (M.D.Tenn.1966) on these points. Thus, the Court ruled that each plaintiff would be required to demonstrate by sufficient proof that she had filed a charge with the EEOC *and received a letter of probable cause before she could become eligible to collect damages or seek reinstatement or employment preference with Colgate.* This is a jurisdictional prerequisite. (Emphasis added.)

In Anthony v. Brooks (N.D.Ga.1967) the Court said, "While these cases do not reach uniform results on that question, they all agree that (1) the filing of the complaint with the Equal Employment Opportunity Commission and (2) the notification of failure to conciliate (42 U.S.C.A. § 200e–5(e)) are necessary to invoke jurisdiction of a federal District Court."

Similarly in Moody v. Albemarle Paper Co., 271 F.Supp. 27, 29 (E.D.N.C.1967) the Court said:

> After an aggrieved party has filed a written complaint with the Equal Employment Opportunity Commission *and has received notice from the Commission that voluntary compliance within sixty days from receipt of the complaint by the Commission has not been affected,* (sic) no further formal efforts toward conciliation by the Commission are necessary to open the district courts to a private civil action by the complainant against a respondent named in the charge theretofore filed with the Commission. (Emphasis added.)

Not all the courts have indicated the same attitude on the necessity of notice of failure of conciliation, or as some of the courts denominate it, notice of good cause. In the often cited case of Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn.1966) the Court said, at 251 F. Supp. 188:

> It seems clear, therefore, that the requirement of resort to the Commission was designed to give a discriminator opportunity to respond to persuasion rather than coercion, to soft words rather than the big stick of injunction; that the requirement was not designed to serve as a screen to prevent frivolous complaints from reaching the courts.

In Mondy v. Crown-Zellerbach Corp., 271 F.Supp. 258 (E.D.La.1967) the Court dealt with a different problem, but pointed out the difficulty presented to any plaintiff. In *Mondy*, the plaintiff had not brought suit until he received notice that conciliation had failed. This came more than ninety (90) days after filing his complaint with the Commission. The defendants contended that the plaintiff was required to file his suit within ninety (90) days after filing his complaint with the Commission because the Commission had only sixty (60) days to attempt conciliation and plaintiff would have thirty (30) days thereafter to file

his suit. The Court rejected this contention because it would have placed the plaintiff in an impossible position. It stated that the defendant would have objected had the plaintiff filed suit within the ninety (90) days because he had not yet received notice of failure of conciliation and the defendant would further have objected had the plaintiff waited, as he did, until he received notice because this was more than ninety (90) days after the original complaint. The Court held, along with Dent v. St. Louis-San Francisco Ry., 265 F.Supp. 56 (N.D. Ala.1967), that a party had until thirty (30) days after the notice from the Commission to file suit in the District Court.

Language which indicates the attitude of some courts to the problems of this act, without being directly on point is found in Quarles v. Philip Morris, 271 F. Supp. 842, 847–848 (E.D.Va.1967) which held that plaintiff was not required to prove actual efforts at conciliation by the Commission: "The plaintiff is not responsible for the acts or omissions of the Commission. He, and the members of his class, should not be denied judicial relief because of circumstances over which they have no control. The plaintiff exhausted administrative remedies and satisfied the requirements of the Act by filing a complaint with the Commission and awaiting its advice."

None of these cases clearly indicate that the notice mentioned in the statute is not a condition precedent to filing of suit, and none have squarely held otherwise, although there is a good deal of dicta to the effect that the notice is jurisdictional. The legislative history is no more helpful because this act was repeatedly amended without extensive consideration. The most pertinent comments are those of Senator Humphrey at 110 Cong. Rec. p. 13694 (June 17, 1964) where he said:

> The individual may proceed in his own right at any time. He may take his complaint to the Commission, he may bypass the Commission or he may go directly to Court.

Senator Javits' comments at 110 Cong. Rec. 13697 (June 17, 1964) are equally pertinent:

The fatal defect of the amendment is that the provision it would amend is not the key to the courtroom door, because the Commission does not have to find that the complaint is a valid one before the complainant individually can sue or before the Attorney General can bring a suit to establish a pattern practice of discrimination. The Commission may find the claim invalid; yet the complainant still can sue, and so may the Attorney General, if he finds reasonable cause for doing so. In short the Commission does not hold the key to the courtroom door. The only thing this title gives the Commission is time to find that there has been a violation and time in which to seek conciliation.

As seen in these two passages, the legislative history is not entirely clear. The remarks of Senator Humphrey have not been followed by the Courts. (See Dent v. St. Louis-San Francisco Ry., 265 F. Supp. 56 (N.D.Ala.1967)). They do reveal, however, that the Commission was not to be the final arbitrator of the plaintiff's rights. The best interpretation of the statute, one supported by the remarks of Senator Javits, is that the plaintiff must, as we have held, resort to the Commission before coming to the Court. The Commission is to have the opportunity to bring about conciliation but, if and when it fails, the plaintiff may bring his case in Court. To carry out this intention, the clear mandate of the statute requiring a notice of failure to obtain voluntary compliance prior to a lawsuit, should be followed.

■ Having carefully examined all the law relied upon by the parties and other pertinent material, the Court finds that a notice of failure of conciliation is a necessary pre-requisite to suit in the Federal Court. This is particularly true where the Commission's rule provides that such notice may be obtained on request any time after termination of the sixty (60) day period. Both the statutes and regulations provide for such notice.

The statute provides that it "shall" issue after a maximum of sixty (60) days, and the regulations provide that it "shall" issue after sixty (60) days upon request by either party. The notice of failure of conciliation provides an important link in the legislative scheme. The statutory period of limitations commences with the receipt of such notice. The statute itself provides that a civil action may be brought within thirty (30) days after such notice. Without it, the Court has no jurisdiction to hear the complaint.

■ Only in exceptional circumstances may this requirement be waived. If a plaintiff can state that he waited sixty (60) days, and properly demanded that such notice be issued but that the Commission failed or refused to issue the notice, then a suit might be commenced. That is not the situation here, however. In this case the plaintiffs never received the notice and never alleged that they asked for it. Their complaints must therefore be dismissed. Those plaintiffs who are not otherwise barred from maintaining this suit as indicated in this opinion may refile their suit upon receipt of a notice of failure of conciliation.

■ The defendants also contend that "conciliation" means an agreement between the Commission and the alleged discriminator, not an agreement with the charging party. Thus, they contend that conciliation was reached here when U. S. Gypsum agreed to the Commission's proposal. Under their theory, no matter how unsatisfactory a settlement was to the aggrieved party, they could be barred from seeking judicial relief. The defendant U. S. Gypsum has no authority to support this position other than the language of the act itself. Title 42 U.S.C. § 2000e–5(e) provides, "If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference * * * the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought

against the respondent named in the charge * * * ".

The plaintiffs contend that the above language is not conclusive and that other language in the act points to a mutual agreement between the aggrieved party and the respondent. The plaintiffs rely on Title 42 U.S.C. § 2000e–5(a) which provides in part, "If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of *conference, conciliation, and persuasion.* Nothing said or done during and as part of such endeavors may be made public by the Commission without the written consent of the parties, or used as evidence in a subsequent proceeding." (Emphasis added.)

The plaintiffs position is supported by the legislative history. Originally, the House Bill envisioned the Commission as the primary enforcement medium for the Act. Only the Commission was to have the power to go to Court. However, this was entirely changed by the Senate and accepted by the House. The legislative history in the Senate, as shown by the remarks already quoted, does not indicate an intention of placing the Commission in the Court House door. If the Commission were allowed to reach an agreement with the respondent without the consent of the aggrieved party, there would be no way for the aggrieved party to have this decision reviewed. He could not even have the agreement held up to public scrutiny without the consent of the respondent. The personal rights of the aggrieved party would be completely subject to the Commission. That the Commission does not take this view of its work is made clear in its letter to the defendant U. S. Gypsum sent June 19, 1967, and signed by Mr. Springer, Director of Compliance. This letter, already quoted, stated, "We must point out, however, that proposals submitted by a conciliator are not binding on the charging parties." This is the only interpretation consistent with the purposes of the

act and structure of the Commission. To hold otherwise would prevent effective protection of the individual rights guaranteed by the Act. This Court finds that the Act does not prevent a private suit because an employer agrees to a proposal totally unacceptable to the charging party.

Some of the cases have held that an attempt at conciliation is necessary before the aggrieved party may invoke the aid of the Courts. Dent v. St. Louis-San Francisco Ry., 265 F.Supp. 56 (N.D.Ala. 1967). If this is a requirement, and the majority of cases hold that it is not, it is fully met here. The Commission had over a year within which to reach some accord. The Commission submitted proposals which the respondent accepted with modifications but which were rejected by the plaintiffs. No more could be asked of the Commission or the parties. The motions for summary judgment and for dismissal based on U. S. Gypsum's alleged agreement to the Commission proposals are therefore denied.

In summary, this Court has found that an aggrieved party must file charges against a respondent with the Commission before he can sue that respondent in Court. Such a charge must give sufficient notice to the respondent and the Commission of the conduct that is allegedly discriminatory and it must be filed within ninety (90) days of such conduct. In this connection, the Court holds that: an alleged discriminatory layoff is not a continuing violation unless the charge includes some allegation of additional continuing discrimination; "conciliation" or the notice of failure to achieve voluntary compliance does not refer to the agreement of the respondent to a Commission proposal, but a mutually satisfactory agreement of the charging party and the respondent; the plaintiffs must obtain a notice of failure of conciliation before commencing a suit in the Courts.

Finally, the Court has found that the defendant International Brotherhood of Teamsters, Local 142's motion for summary judgment must be granted as to all

defendants. The pleadings, exhibits and stipulations on file show that there is no substantial issue of material fact between said defendant and the plaintiffs. They show conclusively that plaintiffs Messock, Dubos and Gajewski failed completely to file any charges against the defendant union with the Equal Employment Opportunity Commission. The records also show that the only charges filed by plaintiffs Burk, Murga, Cox and Handlon against the union were charges of failure to protect their employment rights but that these plaintiffs never invoked the aid of the defendant union under the Union Contract. The motions of both defendants for summary judgment must be granted as to Emma Burk, Anna Murga and Adeline L. Cox on the ground that there is no substantial issue of material fact and said plaintiffs failed to file timely charges against the defendants before the Equal Employment Opportunity Commission. Finally, the complaints of all plaintiffs must be dismissed because they did not obtain the statutory notice of failure to obtain voluntary compliance before commencement of the law suit.